PATRICIA LEWIS, SBN 212728
E-Mail - *PALewis@LawFirmPal.com*
LEWIS LAW FIRM
1202 Kettner Boulevard, Suite 6100
San Diego, California   92101-3312
Telephone:   (619) 225-0747
Facsimile:   (619) 255-2452

Attorney for Plaintiff



# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DISVISION

| | |
|---|---|
| PAMMA TAHAN,<br><br>                             Plaintiff,<br><br>          -v-<br><br>CAREER EDUCATION<br>CORPORATION;<br>BROOKS INSTITUTE OF<br>PHOTOGRAPHY,<br><br>                             Defendants. | CASE NUMBER 2:10-CV-01387-JST-SSx<br><br>[██████] FIRST AMENDED COMPLAINT<br>FOR DAMAGES<br>1.   Violations of California Education Code<br>2.   Fraud<br>3.   Negligent Misrepresentation<br>4.   Breach of Contract<br><br>Courtroom:  10A, Santa Ana<br>Judge:       Hon. Josephine Staton Tucker |

Plaintiff, Pamma Tahan ("Tahan"), alleges and complains as follows:

## I.

### *SUMMARY OF ALLEGATIONS*

1.       Tahan is a former student of defendant, Brooks Institute of Photography ("Brooks"), owned and operated by defendant, Career Education Corporation ("CEC"). Brooks and CEC violated the former Private Postsecondary and Vocational Education Reform Act of 1989, being Education Code §§94700, *et seq.* ("The Reform Act"), committed fraud, made negligent misrepresentations, made omissions of material facts and breached their agreements with Tahan, in furtherance of a conspiracy to reap monetary gains at the expense of Tahan, causing plaintiff to incur substantial student debt in excess of $68,000, plus interest.

///

FIRST AMENDED COMPLAINT

## II.

## JURISDICTION

2.      Defendants have removed this case based on diversity jurisdiction over the action pursuant to 28 USC §1332.   Tahan reserves the right to raise the issue of diversity.

## III.

## THE PARTIES

3.      In or about 2002, plaintiff, Tahan, applied for admission to Brooks to obtain a Bachelor of Arts Degree in professional photography, with anticipated completion time of three years.   Tahan attended Brooks at the Ventura campus, 5301 North Ventura Avenue, Ventura, California, beginning in or about July 14, 2003, until in or about June, 2006.

4.      Defendant, CEC, is a California corporation, authorized to do and doing business in Ventura County, is one of the largest providers of private, for-profit post-secondary education in North America, and has owned and operated Brooks since June 1999, with campuses in Santa Barbara and Ventura, California.

5.      Defendant, Brooks, is private, for-profit post-secondary educational institution which offers degrees and diplomas in professional photography, visual journalism, visual communication, and film & video production.   Defendant, Brooks, is wholly owned by defendant, CEC, and is authorized to do and doing business in Ventura County, California.

6.      The true names and capacities of defendants sued herein under CCP §474 as Does 1 through 50, inclusive, are presently unknown to plaintiff who therefore sue these defendants by such fictitious names.   Plaintiff will seek leave to amend this complaint with the identity of the true names and capacities of the Doe defendants when ascertained. ///

Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by plaintiff.

7.     Plaintiff is informed and believes and thereon alleges, that, at all relevant times, the defendants, and each of them, were, and acted as, the principals, agents, partners, joint venturers, officers, directors, controlling shareholders, subsidiaries, affiliates, parent corporations, successors in interest and/or predecessors in interest of some of the other defendants, and authorized, ratified, adopted, approved, controlled, aided and abetted, and knew or should have known about the conduct of other defendants.

8.     Plaintiff is informed and believe, and thereon alleges, that defendants, CEC, Brooks, and Does 1 through 50, and each of them, conspired and cooperated to do the things alleged herein, that CEC, Brooks, and Does 1 through 50, and each of them, were aware that the plans made were to commit the wrongs alleged herein, that CEC, Brooks, and Does 1 through 50, and each of them, agreed and intended to commit the wrongs alleged herein, and that CEC, Brooks, and Does 1 through 50, and each of them, profited as a result.

*IV.*

*THE AGREEMENTS*

9.     Tahan signed four enrollment agreements with CEC and Brooks:

a.     On or about October 21, 2002, Tahan signed an Enrollment Agreement providing for tuition and fees to Brooks and CEC of $18,450 (Exhibit A);

b.     On or about June 16, 2004, Tahan signed an Enrollment Agreement providing for tuition and fees to Brooks and CEC of $22,200 (Exhibit B);

c.     On or about June 9, 2005, Tahan signed an Enrollment Agreement providing for tuition and fees to Brooks and CEC of $24,420 (Exhibit C);

d.     On or about June 15, 2006, Tahan signed an Enrollment Agreement providing for tuition and fees to Brooks and CEC of $4,060 (Exhibit D).

FIRST AMENDED COMPLAINT

10.     Brooks and CEC published a catalog containing the policies, rules and procedures about Brooks.  The 2002 Enrollment Agreement requires Tahan to abide by the school regulations and certify to receipt of the catalog (Exhibit A).  The 2004, 2005, and 2006 Enrollment Agreements, at page 2, requires Tahan to "... agree to abide by the terms stated in the catalog ..." (Exhibits B, C, D).   Defendants gave Tahan the 2002 Brooks Catalog which provides, on page 3, that Brooks' authority to operate is given by the California Bureau which implements The Reform Act.

## V.

### THE MISREPRESENTATIONS

11.     Defendants, and each of them, through their representatives, employees and agents, including, but not limited to Sal Medina, Dave Oehldrich, Raina Heinrich, Susan Hornbeck, John Calman, and Cari Cawell, gave false and misleading information and omissions of critical information, in a pervasive pattern, to Tahan regarding (a) expected starting salaries, (b) employment placement rates, (c) financial aid, (d) career connections in the industry, and (e) non-transferability of credits, in violation of The Reform Act under Education Code §§94814, 94816, 94832.

12.     Admission representatives and other employees of defendants, and each of them, including Sal Medina, used scripts in 2002 prepared by defendants and each of them, which stated what misrepresentations of fact needed to be said to Tahan with the purpose of obtaining Tahan's enrollment at Brooks, and the easily obtained student loans.

13.     Tahan relied on the misrepresentations made by defendants, and each of them, through their representatives, employees and agents, made orally and in writing in the Enrollment Agreements, the Brooks Catalog, and in other writings, in making her decisions to attend Brooks and subsequently incur tuition and education related costs.  Tahan suffered harm by the money she paid and the debts she incurred for tuition, supplies, equipment and living expenses, as a result of enrolling in Brooks.

FIRST AMENDED COMPLAINT

## A.     EXPECTED STARTING SALARIES

14.     During the application process, in October 2002, the Brooks admissions representative, Sal Medina, assured Tahan that she would be earning an annual salary between $60,000 to $100,000 or more, during her first year of employment, in her field of study, following graduation, so she should not be concerned with rising loan costs as she will easily repay the loans with her earnings.

15.     Defendants, and each of them, and their agents and representatives, knew, or should have known, that Brooks' graduates starting salary ranges were between $10 to $18 per hour, certainly not anywhere near the promised $60,000 to $100,000 a year.

16.     Contrary to the representations made by defendants, and each of them, through their representatives, employees and agents, after receiving a Bachelor of Arts degree from Brooks, Tahan was unable to secure employment earning approximately $100,000 per year.  Tahan is informed and believes that when she finished at Brooks, she owed in excess of $68,000, for student loans which she obtained in reliance on the representations made to her by defendants, and each of them.

## B.     EMPLOYMENT PLACEMENT RATES

17.     The 2002 Catalog given to Tahan contained a section entitled Completion Rates and Employment Outlook.  This section referred to a "Student-Right-To-Know and Campus Security Act" addendum ("Addendum") which accompanied each Catalog.  The Addendum contained statistical information on the graduate "employment outlook" and job placement.  The Addendum contained graduate job placement rates which had been purposefully inflated thereby rendering them false and misleading, stating that 94% of Brooks graduates with the Bachelor of Arts degree were employed in their field.

///

///

FIRST AMENDED COMPLAINT

18.     The CEC and Brooks admissions representatives, including, but not limited to, Sal Medina, echoed the false and misleading placement rates touted in the school Catalog and Addendum and reassured Tahan that virtually all Brooks graduates obtain jobs within their field of study.   In or about October 2002, Sal Medina told Tahan that approximately 95% of all Brooks graduates were employed in the first year following graduation.

19.     Tahan relied on the misrepresentations regarding career placement made in the Brooks Catalog, Addendum, and by the admissions department personnel in making her decision to attend Brooks and subsequently incurred tuition and education related costs.

## C.    FINANCIAL AID

20.     Defendants, and each of them, through their representatives, employees and agents, omitted material facts in their Catalog, required by The Reform Act, regarding loan indebtedness a student may incur while enrolled in Brooks programs.  The 2002 Brooks Catalog given to Tahan states that each student who receives student loan funding will be given mandatory loan entrance counseling in the first or second week of classes in each session.

21.     When Tahan enrolled at Brooks in October 2002 and again each year she was required to re-enroll, she was encouraged and advised by representatives and agents of defendants, and each of them, including, but not limited to, Sal Medina, admissions representative, and Susan Hornbeck, financial aid officer at Brooks, that she should apply for the easily obtained student loan monies.

22.     Defendants, and each of them, knew or should have known, that the loans are consumer loans, and that providing consumer counseling as promised and required

FIRST AMENDED COMPLAINT

under The Reform Act would be beneficial to Tahan's management of her loan debt over the course of her enrollment at Brooks.

## D.   CAREER CONNECTIONS IN THE INDUSTRY

23.   The 2002 Brooks Catalog given to Tahan by defendants, and each of them, stated, convincingly: at page 5, that Brooks had a "competitive advantage" in its connections to the professional photography community; at page 7, that Brooks has a worldwide reputation which is enhanced by its alumni who are "... a select group of people who earn their living by making images;" and, at page 9, that Brooks has industry connections unsurpassed for those seeking a professional photography career.

24.   Beginning in 2002, and continuing, Tahan was repeatedly assured by agents, representatives and employees of defendants and each of them, including, but not limited to, Sal Medina and Cari Calwell, that she would be able to obtain employment through the industry wide connections and Brook's Career Services Office.

25.   Defendants, and each of them, knew, or should have known, that their alleged industry connections would not be available to Tahan and their Career Services Office would send its graduates emails for jobs posted on places such as Craig's List.

## E.   NON-TRANSFERABILITY OF CREDITS

26.   Defendants, and each of them, through their representatives, employees and agents, failed to provide Tahan the disclosure information required by The Reform Act regarding non-transferability of units and degrees earned.

27.   Beginning in 2002 and continuing even after receiving her diploma in April 2007, Tahan was advised by defendants and each of them, through their representatives,

///

employees and agents, that her class credits earned at Brooks would be transferrable to other colleges and universities.

28.     Defendants, and each of them, knew, or should have known, that none of Brooks' earned class credits or the degree, were likely to transfer to any other college for credit, and that Tahan would, in all likelihood, be required to start over with her education in another institution, if she wanted any further education or if she wanted her degree to be accepted.

## VI.
### THE CLASS ACTION

29.     In November 2007, CEC and Brooks entered into a class action settlement providing a settlement fund to compensate class member-students for monetary damages incurred as a result of issues alleged herein.   *Nilsen v. Career Education Corporation,* was filed in the Superior Court of California, Santa Barbara County, being case number 1165597, on 02/04/05 on behalf of students who enrolled in Brooks between 01/01/99 and  08/31/07.

30.     On or about January 21, 2008, Tahan was sent notice of the *Nilsen* class action settlement regarding the matters complained of herein, in response to which Tahan gave written notice that she elected to exclude herself from the class settlement.  Tahan is listed in the Judgment Granting Final Approval to the Class Settlement, as a person who timely requested exclusion from the class settlement.  Tahan is not bound by the terms of the class settlement.

## VII.
### DISCOVERY

31.     On or about January 21, 2008, Tahan was sent the Class Action notice of settlement which disclosed to her that CEC and Brooks had engaged in fraud and

///

1  misrepresentations and violations of The Reform Act regarding the matters she had
2  experienced as alleged herein.

### VIII.

### FIRST CAUSE OF ACTION

### (Violations of California Education Code)

6      32.    Plaintiff realleges and incorporates herein by reference each of the foregoing
7  paragraphs as though fully set forth herein.

9      33.    Sunset provisions of The Reform Act contained Savings Clauses authorizing
10  a student to maintain a cause of action subsequent to repeal, if the cause of action arose
11  during the life of The Reform Act, regardless of the repeal.   Plaintiff's claims as alleged
12  herein accrued continuously beginning in 2002, prior to, and subsequent to, the 2008
13  repeal of The Reform Act.   The Reform Act is based on common law fraud,
14  misrepresentation and contract law, and, as such, is a viable cause of action for plaintiff
15  even after repeal.   The Reform Act was revived by Educ. Code §§94809.5 and 94809.6.

17      34.    The actions, and failures to act, by defendants, and each of them, violate The
18  Reform Act.   Education Code §§94814, 94816 and 94832.

20      35.    Section 94814(a) of the California Education Code states in relevant part that
21  a postsecondary and vocational institution, such as Brooks:

      (a)    shall provide to students and other interested persons, prior to enrollment, a catalog or brochure containing at a minimum the following information:

      (a)(7) For institutions that participate in federal and state financial aid programs (*e.g.* Brooks), all consumer information that the institution is required to disclose to the student.

27  ///
28  ///

FIRST AMENDED COMPLAINT

  (a)(8) All other material facts concerning the institution and the program or course of instruction that are reasonably likely to affect the decision of the student to enroll, as prescribed by rules and regulations adopted by the council.

Cal. Educ. Code §94814(a).

36. Defendants, and each of them, violated Education Code §94814 by not accurately disclosing the extent of Tahan's anticipated indebtedness in student loan programs, by not reporting accurately the anticipated earnings of its graduates, by not truthfully disclosing the percentage of students placed for employment after graduation, and the value of its employment connections with the photography industry, facts which were reasonably likely to affect Tahan's decision to enroll in Brooks.

37. Education Code §94816(a)(4) requires, in pertinent part, that if an institution, such as Brooks, makes claims about annual starting wages or salaries of graduates of the institution's programs, the institution shall disclose to students the objective sources of this information in order to substantiate the truthfulness of their claims.

  (a)(4) The average annual starting wages or salary of graduates of the institution's Program, if the institution makes a claim to prospective students regarding the starting salaries of its graduates, or the starting salaries or local availability of jobs in a field. The institution shall disclose to the prospective student, the objective sources of information necessary to substantiate the truthfulness of the claim.

Cal. Educ. Code §94816(a)(4).

38. The representations by defendants, and each of them, regarding expected salaries were in violation of Education Code §94816(a)(4) by failing to disclose and/or failing to truthfully disclose to Tahan, the objective sources of the information about annual starting wages or salaries of graduates which Brooks touted to Tahan and upon which Tahan reasonably relied in deciding whether to enroll in Brooks' programs and incur substantially high student loan debt.

///

///

FIRST AMENDED COMPLAINT

39. Education Code § 94816(b) states that,

   (b)   In addition to the fact sheet required by subdivision (a), each institution offering a degree program designed to prepare students for a particular vocation, trade, or career field and each institution subject to Article 7 (commencing with Section 94850) shall provide to each prospective student a statement in at least 12-point type that contains the following statement:
   "NOTICE CONCERNING TRANSFERABILITY OF UNITS AND DEGREES EARNED AT OUR SCHOOL.  Units you earn in our _____ (fill in name of program) program in most cases will probably not be transferable to any other college or university, for example, if you entered our school as a freshman, you will still be a freshman if you enter another college or university at some time in the future even though you earned units here at our school.  In addition, if you earn a degree, diploma, or certificate in our _____ (fill in name of program) program, in most cases it will probably not serve as a basis for obtaining a higher level degree at another college or university."

   Cal. Educ. Code §94816(b).

40. Defendants, and each of them, failed to comply with Education Code \ §94816(b) by not providing to Tahan the required statement with the written warnings that the Brooks credits in most cases would not be transferable to another institution, information which Tahan would not expect to know.

41. Section 94832 of the California Education Code, subsections (a), (b), and (h) provide, in pertinent part as follows:

   (a)   no institution or representative of an institution shall make or cause to be made any statement that is in any manner untrue or misleading, either by actual statement, omission, or intimation.

   Cal. Educ. Code §94832(a).

   (b)   No institution or representative of an institution shall engage in any false, deceptive, misleading, or unfair act in connection with any matter, including the institution's advertising and promotion, the recruitment of students for enrollment in the institution ... education materials, or loan or grant funds from a student, .... or job placement.

   Cal. Educ. Code §94832(b).

///

FIRST AMENDED COMPLAINT

(h)(1)  No institution or any representative of an institution shall in any manner make any untrue or misleading change in, or untrue or misleading statement related to, any test score, grade, record of grades ... record indicating student completion or employment, financial information ...

Cal. Educ. Code §94832(h)

42.     The representations made by defendants, and each of them, in enrollment agreements, catalogs, scripts and as set forth hereinabove, violate §94832 of the California Education Code, and fail to provide Tahan with the truth of the representations, upon which Tahan relied in deciding to enroll in Brooks' programs.

43.     Any institution that wilfully violates any provision of §§94814, 94816, or 94832 may not enforce any contract or agreement arising from the transaction in which the violation occurred.   Education Code §94985(a).

44.     If the trier of fact finds that an institution wilfully violated Educ. Code §§94814, 94816, or 94832, the court "...shall award a civil penalty of up to two times the amount of the damages sustained by the student." Educ. Code §94985(c).   Tahan suffered monetary damages as a result of the tuition and education related debt incurred by enrolling in Brooks in reliance on the misrepresentations and omissions by defendants, and each of them, made in violation of Educ. Code §§94814, 94816 and/or 94832, in an amount in excess of $68,000, plus interest, and requests economic damages thereto. Tahan also request a civil penalty of double damages.

45.     The remedies available under The Reform Act supplement other legal remedies to which Tahan is entitled.  Educ. Code §94985(d).   Tahan requests attorneys fees authorized by Civ. Code §1717 under the enrollment agreement dated October 21, 2002, which extends to disputes arising out of the contract.

///

///

FIRST AMENDED COMPLAINT

*IX.*

## SECOND CAUSE OF ACTION

*(Fraud)*

46.    Plaintiff realleges and incorporate herein by reference each of the foregoing paragraphs as though fully set forth herein.

47.    Defendants, and each of them, made misrepresentations to Tahan repeatedly about financial aid, expected salary ranges, industry employment connections and/or placement.  These representations were made orally and in the Catalogs, in scripts and other writings by defendants and each of them, and their representatives and agents, who used these misrepresentations as a means to induce students to enroll.  Financial aid, expected salaries, anticipated job placement, and employment connections in the industry are the type of material information relied on by Tahan in making a decision to enroll and incur education related debt.

48.    The fraudulent misrepresentations by defendants, and each of them, caused Tahan to be misled and deceived into believing what defendants knew were not true. Defendants, and each of them, either knew these representations and omissions were untrue at the time in which they were made or made these representations recklessly without regard for the truth.

49.    Defendants, and each of them, intended for Tahan to rely on these representations and omissions in order to entice Tahn to enroll in Brooks.  Tahan reasonably relied on the fraudulent misrepresentations and omissions by defendants, and each of them, in deciding to attend Brooks and incurred expenses associated with a Brooks education.   The reliance by Tahan upon the fraudulent misrepresentations and omissions by defendants, and each of them, was a substantial factor causing her harm.
///

50.     In reliance on the fraudulent misrepresentations and omissions by defendants, and each of them Tahan suffered compensatory damages, including the tuition and education related debt incurred by enrolling in Brooks, in excess of $68,000, plus interest, according to proof.

51.     Tahan requests punitive damages against defendants, and each of them, as a result of the fraudulent acts and failures to act alleged, to be stated at the appropriate time.

52.     Tahan requests attorneys fees authorized by Civ. Code §1717 under the enrollment agreement dated October 21, 2002, which extends to disputes arising out of the contract.

## X.

### THIRD CAUSE OF ACTION

### (Negligent Misrepresentation)

53.     Plaintiff realleges and incorporate herein by reference each of the foregoing paragraphs as though fully set forth.

54.     Defendants, and each of them, owed a duty to Tahan to provide the information needed for her to make an informed decision about whether to enroll in Brooks and incur student loan debt.

55.     Defendants, and each of them, negligently breached their duty to Tahan, when they repeatedly made representations, orally and in writing, about financial aid, expected salaries, industry connections and/or job placement, which they alleged to be true, when such statements and representations were false.   These representations were the type of material information relied on by Tahan in making a decision to enroll  and incur education related debt.

///

FIRST AMENDED COMPLAINT

56.     Defendants, and each of them, had no reasonable grounds for believing the representations were true when they made it. Defendants, and each of them, intended for Tahan to rely on these representations and omissions in order to entice Tahan to enroll in Brooks.

57.     Tahan reasonably relied on the representations and omissions by defendants, and each of them, in deciding to attend Brooks and incurred tuition and related expenses. The reliance by Tahan upon the misrepresentations and omissions by defendants, and each of them, was a substantial factor causing her harm.

58.     As a direct and proximate result of the acts and failures to act by defendants, and each of them, Tahan suffered compensatory damages including tuition and education related debt, in excess of $68,000, plus interest, according to proof.

59.     Tahan requests attorneys fees authorized by Civ. Code §1717 under the enrollment agreement dated October 21, 2002, which extends to disputes arising out of the contract.

*XI.*

*FOURTH CAUSE OF ACTION*

*(Breach of Contract)*

60.     Plaintiff realleges and incorporates herein by reference each of the foregoing paragraphs as though fully set forth herein.

61.     Defendants and each of them, breached their agreements with Tahan by: failing to truthfully disclose the average starting salaries, and the job placement rates of Brooks graduates, failing to truthfully disclose the extent of Brooks' employment connections in the industry,  failing to disclose to Tahan all the terms of the student loans, and failed to provide the advice, counseling and informational disclosures which they

FIRST AMENDED COMPLAINT

were required to do under their agreements with Tahan and under the requirements of The Reform Act as incorporated into the agreements.

62.   Tahan did all, or substantially all, of the significant things required of her by the agreements with defendants.

63.   As a result of defendants' breaches, Tahan incurred student loan debt for a breach of contract damage in excess of $68,000, plus interest.

64.   The tuition contract entered into by Tahan on or about 10/21/02 (Exhibit A) contains provision for attorney's fees.  Plaintiffs request attorney fees under Civ. Code §1717.

## *PRAYER*

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, jointly and severally, for the following:

1.   Compensatory damages according to proof;

2.   Civil statutory penalty of double compensatory damages;

3.   Punitive and exemplary damages;

4.   Breach of contract damages in excess of $68,000, plus interest;

5.   Prejudgment Interest;

6.   Attorney fees;

7.   Costs of suit;

8.   Such other and further relief as the court deems just and proper.

DATED:   August 27, 2010                    LEWIS LAW FIRM

                                            PATRICIA LEWIS,
                                            Attorney for Plaintiff

FIRST AMENDED COMPLAINT

# Exhibit A

Atten Sue Bor...

**Student Enrollment Agreement**

# BROOKS INSTITUTE OF PHOTOGRAPHY (the Institution)

~ntecito Facility - 801 Alston Road, Santa Barbara, CA 93108 (mailing address)
~erson Facility - 1321 Alameda Padre Serra, Santa Barbara, CA 93103
~late Street Facility - 1722 State Street, Santa Barbara, CA 93101
Ventura Facility – 5301 N. Ventura Ave., Ventura CA 93001
(805) 966-3888/(888) 304-3456

| Pamma Tahan | | (blacked out) | |
|---|---|---|---|
| ~dent's Name (the Student) | Student's Social Security Number | | Student's Home Phone |
| (blacked out) | City | CA    State    USA    Country | Zip Code |
| ~dent's Mailing Address | | | |
| ~X-8 | USA | | |
| ~e of Birth (Month, Date, Year) | Country of Citizenship | | |

**UCATIONAL OBJECTIVE BEGINNING** __July 14, 2003__

Bachelor of Arts Degree Program (18 Sessions/159 Semester Credits)
___ Film and Video Production
___ Professional Photography
_X_ Visual Journalism
___ Visual Communications

☐ Associate of Arts Degree Program (8 Sessions/72 Semester Credits)
___ Visual Journalism
___ Visual Communications

Diploma Program (17 Sessions/108 Semester Credits)
___ Film and Video Production
.. Professional Photography

☐ Pre-Grad Studies (in preparation for the MS Degree)
_____ Sessions/_____ Semester Credits

**PE OF THIS AGREEMENT:**

~ ~llment Agreement covers enrollment in 3-9 semester credits in each of _6_ Session(s) beginning on _7-14-03_ and ending on _6-26-04_

<table>
<tr><td colspan="2">Post-It® Fax Note 7671</td><td>Date 6-12-03</td><td># of pages ▶ 1</td><td></td><td colspan="2" rowspan="2">Application Fee</td><td>Academic Year</td></tr>
<tr><td colspan="2">To Bernice</td><td colspan="2">From Borgia</td><td></td><td>$ 135</td></tr>
<tr><td colspan="2">Co./Dept. Finacial Aid</td><td colspan="2">Co.</td><td></td><td colspan="2">on-refundable, California Residents Only</td><td>$ 55.35</td></tr>
<tr><td colspan="2">Phone #</td><td colspan="2">Phone # 879-8604</td><td></td><td>Session 5</td><td>Session 6</td><td></td></tr>
<tr><td>TUITION</td><td>Fax # 585-8021</td><td colspan="2">Fax #</td><td>5</td><td>$2,975</td><td>$2,975</td><td></td></tr>
<tr><td>IVITY FE</td><td></td><td></td><td></td><td></td><td>$100</td><td>$100</td><td></td></tr>
<tr><td>-refundable</td><td>$100</td><td>$100</td><td>$100</td><td>$100</td><td></td><td></td><td></td></tr>
<tr><td>TOTAL</td><td>$3,075</td><td>$3,075</td><td>$3,075</td><td>$3,075</td><td>$3,075</td><td>$3,075</td><td>$18,450</td></tr>
<tr><td>~ment Due Date</td><td>30 days before start of class</td><td colspan="5">Due at time of registration each session.<br>See Catalog Calendar insert for details.</td><td></td></tr>
<tr><td colspan="6"></td><td>Annual Tuition and Fees</td><td>18,638.55</td></tr>
</table>

**SIGNATURE BELOW CERTIFIES THAT I HAVE READ, UNDERSTOOD, AND AGREED TO MY RIGHTS AND ~PONSIBILITIES, AND THAT THE INSTITUTION'S CANCELLATION AND REFUND POLICIES HAVE BEEN CLEARLY ~LAINED TO ME.**

| _Pamma Tahan_ 10-21-02 | _Tawtto Tahen_ 10-21-02 |
|---|---|
| ~ture of Student    Date | Signature of Parent/Guardian(Required only for minor applicants)    Date |

| _Borgia Wasen_ | _6-30-03_ |
|---|---|
| ~ture of Institutional Representative | Date |

~ny questions or problems concerning this school which have not been satisfactorily answered or resolved
by the school should be directed to the Bureau for Private Postsecondary and Vocational Education,
400 R Street, Suite 500, Sacramento, CA 95814.  (916) 445-3427

~ AGREEMENT IS LEGALLY BINDING WHEN SIGNED BY THE STUDENT (AND PARENT/GUARDIAN, IF APPLICABLE) AND ACCEPTED BY THE INSTITUTION.

~PTED BY: _Borgia Wasen_    6-30-03

Signature of A~      Date      Student's Brooks ID

HYPOTHETICAL REFUND EXAMPLE

- A student paid tuition in the amount of $2625 for a session that totaled 90 hours of instruction and
- withdraws after the 36th hour of instruction (54 hours of instruction left)
- the 22nd day of a 55-day session (33 days left)

The student would be entitled to a refund of:

$$\$2755 \times \frac{54}{90} = \$1653$$

f the student had received student loan disbursements of $2000 for the session (and no other government aid):

$$\$2000 \times \frac{33}{55} = \$1200 \text{ of the refund would be sent to the lender and applied toward the outstanding loan principal; the remaining \$300 would be refunded directly to the student}$$

f the Institution cancels a course and the Student does not attend the session, a full refund of all charges for that session will be issued.

The Institution will process student refunds within 30 days of the cancellation/withdrawal. For unofficial withdrawals, the Institution will process student refunds within 30 days f determining that the Student has withdrawn.

---

the Student certifies that he/she has received each of the following documents initialed below and was allowed sufficient time to read and understand them. (Please initial.)

PT ) A copy of this Agreement (prior to signing)
PT ) A current copy of the Brooks Institute of Photography College Catalog
PT ) Buyer's Right to Cancel and Refund Policy (on page two of this Agreement)

**I have read this page of the Agreement. (Please initial.)** (  *PT*  )

**PAGE 3 OF 3**

---

KNOWLEDGMENT OF RECEIPT OF FUNDS  $_____   By: _____   Date: _____

yment Method: ☐ MasterCard  ☐ Visa  ☐ Cash  ☒ Check/Money Order # *2502* _____

EDIT CARD AUTHORIZATION: I hereby authorize the use of my credit card for a one-time charge of $_____ toward the balance listed on this Agreement.

_____          _____          _____
ne as it appears on the credit card          MasterCard/Visa account number          Expiration date

_____          _____
dholder's signature                           Date

**The Student and Institution also understand agree:**

1. Integration: This is the entire Agreement between the Student and the Institution concerning the rights granted and the obligations assumed in this Agreement. This Agreement supersedes any prior representations. This Agreement may only be modified in writing signed by all parties. The Institution will not be responsible for any statement of policy, activity, curriculum, or facility that does not appear in this Agreement or the College Catalog.

2. cess of Student: The Student's individual success or satisfaction is not guaranteed, and is dependent upon the Student's individual efforts, abilities, and application imself/herself to the requirements of the Institution.

3. udent Conduct: The Student agrees to abide by school regulations during the period of his/her attendance and understands that excessive absences, failing grades, non-payment of tuition, or unsatisfactory conduct may result in immediate dismissal.

4. Indirect Educational Expenses: Additional costs that do not appear on this Agreement but that the Student may incur throughout the academic year are estimated at $450 - $550 per month for such items as books, film, supplies, and other incidentals. Because these costs are not direct charges by the Institution, they are non-refundable.

5. Other Fees: The Institution reserves the right to assess additional charges for schedule changes, late payments and returned checks. Separate Agreements will be negotiated to quantify additional charges to students who want to reserve space in specific courses. These non-instructional charges are not refundable.

6. Overload Policy: Occasionally, students may appeal to take more than nine units in a session. Students who are allowed to enroll in an overload are assessed additional charges, which are refundable according to the Institution's Refund Policy (below)

7. Auditing a Course: Separate Agreements will be negotiated to quantify additional charges to students who are approved to audit courses.

8. Liquidated Damages: The parties agree that if the Institution is found to have breached to the Student's substantial detriment a material provision of this Agreement, then the Institution must pay a sum up to an amount equal of any non-refunded tuition payments to the Student, or the Student's lender in the case of a loan, or appropriate government agency in the case of a grant, as liquidated damage.

9. Class Cancellation: The Institution reserves the right to change or eliminate classes when the number of students scheduled to start the class is too small (at the sole discretion of the Institution) to justify continuation of the class, or when weather conditions or other acts of nature are prohibitive.

10. Attorney's and Collection Fees: In any legal action or arbitration between the parties arising out of the Agreement, the Institution, if it prevails, shall be entitled to recover its reasonable attorney's fees in addition to any other relief to which it may be entitled. Further, the Institution shall be entitled to recover attorney's and collection agency fees and interest associated with the collection of a delinquent account of the Student.

11. The Student may be financially liable if he/she loses or damages property belonging to the Institution.

12. Students who withdraw or graduate from the Institution are not eligible to receive academic transcripts, diplomas, or any other services until financial obligations are met.

13. The Institution reserves the right to increase costs in future academic years with 30-day notice.

14. Changing the area of specialization may require additional coursework and might thereby extend the Scheduled Completion Date.

15. In certain defined cases, the State of California requires the Institution to collect a fee for the Student Tuition Recovery Fund (STRF). This fee is not retained by the Institution and is non-refundable.

16. Students who are not California residents are not eligible for protection under and recovery from the Student Tuition Recovery Fund.

## BU 'S RIGHT TO CANCEL/REFUND POLICY

The Student has the right to cancel this Agreement. The amount of the refund and the process to notify the Institution are described in the following Refund Policy. The Student is eligible for a refund of charges paid, as follows:

### Cancellation of this Agreement within three days after signing

Within three business days after signing this Agreement, upon written notice to the Academic Affairs Office, the Student is eligible for a refund of all payments for charges sted on this Agreement. The Academic Affairs Office is located on the Jefferson facility, 1321 Alameda Padre Serra, Santa Barbara, California. For written notice sent by nail to the mailing address listed on the front of this form, the postmark date shall be used to determine the cancellation date.

### Cancellation or Withdrawal prior to the start of instruction of a session

Prior to a session, the Student has the right to a full refund of all tuition charges for that session providing that he/she contacts the Academic Affairs Office. Tuition charges do ot include any non-refundable registration fee or any late charges assessed.

### Withdrawal after a session has started

The Student may withdraw from any session after instruction has started and receive a pro rata refund for the unused portion of tuition and any other refundable charges rovided that at least 40% of the session is remaining. (No refunds are granted once a session is more than 60% completed.) The Student should contact the Academic ffairs Office to begin the withdrawal process. Tuition refunds for withdrawals are calculated based on the following formula (Hours of Instruction include lecture, lab, and xternship for all classes.):

$$\text{TUITION CHARGED} \quad X \quad \frac{\text{NUMBER OF HOURS OF INSTRUCTION LEFT IN THE SESSION (beyond the last day of attendance)}}{\text{TOTAL NUMBER OF HOURS OF INSTRUCTION IN THE SESSION}}$$

student financial aid was disbursed for the session, some or all of the refund amount will be returned to the Student's lender (credited toward the outstanding loan principal) nd/or returned to the appropriate government grant fund, according to a calculation prescribed by federal regulation:

$$\text{AID DISBURSED} \quad X \quad \frac{\text{NUMBER OF DAYS LEFT IN THE SESSION (beyond the last day of attendance)}}{\text{TOTAL NUMBER OF DAYS IN THE SESSION}}$$

he amount of the refund returned to student aid programs cannot exceed the amount of tuition charges collected by the Institution. The order in which financial aid funds are turned is prescribed by federal regulation. (Students who receive financial aid and/or veterans educational benefits may be liable for any required overpayments that are not vered by a tuition refund. The Student's signature on this Agreement acknowledges the responsibility to make any payments required because of a withdrawal.)

**I have read this page of the Agreement. (Please initial.)** ( PT )

# Exhibit B

# Brooks Institute of Photography

Montecito Facility - 801 Alston Road, Santa Barbara, CA 93108 - mailing address
Jefferson Facility - 27 East Cota Street, Santa Barbara, CA 93101
State Street Facility - 1722 State Street, Santa Barbara, CA 93101
Ventura Facility - 5301 N. Ventura Ave., Ventura CA 93001
Mason Street Facility - 25/27 Mason Street, Santa Barbara, CA 93101
(805) 966-3888/(888) 304-3456

Name ("Student") __Pamma Tahan__     Date __6/16/04__

Address ▬▬▬▬▬▬ City ▬▬▬▬▬ State __CA__ Zip ▬▬▬

Telephone (Home) ▬▬▬▬▬▬ Telephone (Work) ▬ Cell ▬

E-Mail ▬▬▬▬▬ Social Security Number ▬▬▬▬

High School __Thousand Oaks HS__ Year Graduated __2003__ GED Certificate Date ▬▬▬

Are you at least 18 years of age? __X__ Yes ___ No
Are you a U.S. citizen? __X__ Yes ___ No If no, are you a resident alien? ___ Yes ___ No

## Program

- [X] Bachelor of Arts Degree Program (18 Sessions/159 Semester Credits)
  - ___ Film and Video Production
  - ___ Professional Photography
  - _X_ Visual Journalism
  - ___ Visual Communications
- [ ] Diploma Program (17 Sessions/108 Semester Credits)
  - ___ Film and Video Production
  - ___ Professional Photography
- [ ] Associate of Arts Degree Program (8 Sessions/72 Semester Credits)
  - ___ Visual Journalism
- [ ] Pre-Grad Studies (in preparation for the MS Degree)
  - _____ Sessions/_____ Semester Credits

Date of first class __July 9, 2004__     Anticipated Completion Date _____

The time frames provided are based on full-time student status for a normally progressing student. The actual time frame for completion can vary depending on the individual.

## Program Costs

The cost for this program at Brooks Institute of Photography ("Brooks") is as follows, subject to the terms and policies as stated in this Enrollment Agreement.

| TUITION AND FEES | | |
|---|---|---|
| Tuition per term | | $3,600 |
| Application Fee | | - |
| Fee | | $600 |
| Books and Supplies | | $0 |
| TOTAL TUITION AND FEES | | $22,200 |

I agree that the payment of program costs will be satisfied by (check all that apply):
[ ] Cash    [ ] Credit Card    [ ] Will Apply for Financial Aid    [ ] Third Party (e.g., VA, Voc Rehab, Employer)

Although this Agreement includes the total length of the program, the program costs section covers only one academic year. The tuition noted above is a per term cost. The Application Fee noted above is comprised of a $35 Application Fee and a $100 Registration Fee and is paid one time at application. The Fee section noted above includes the activity fee for the academic year. The cost of books and supplies is not charged by the institution; it is the direct responsibility of the student to purchase all required items.

By signing below, I certify that I have received a copy of this Enrollment Agreement, and that I have had time to read, understand and agree to comply with all of its terms. I also acknowledge that I have received and had time to read and understand a copy of the Brooks catalog in one of the following formats: printed (hard copy), CD-ROM, or downloaded from the Brooks online registration site, and I agree to comply with all school policies and rules contained therein. I also understand and agree that this Enrollment Agreement supersedes all prior or contemporaneous verbal or written statements and agreements made by Brooks or any employees of Brooks, and that no binding promises, representations or statements have been made to me by Brooks or any employee of Brooks regarding any aspect of the education and training I will receive from the school that are not set forth in writing in this Enrollment Agreement. I further understand and agree that this Enrollment Agreement may not be modified without the written agreement of me and Brooks (except that the stated tuition and fees are subject to change at the discretion of Brooks). I hereby certify that all information I provided in my application for admission to Brooks is complete, accurate and up to date. Once I sign this Agreement, and Brooks accepts this Agreement, I understand that a legally binding contract will be created. My signature indicates that I agree to all of the above terms.

My signature below certifies that I have read, understood, and agreed to my rights and responsibilities, and that the institution's cancellation and refund policies have been clearly explained to me.

__Pamma Tahan__      __6/16/04__
Signature of Student               Date

_____ (required if Student is under the age of 18)     _____
Signature of Parent or Guardian             Date

ACCEPTED BY BROOKS INSTITUTE OF PHOTOGRAPHY

_____     _____     _____
Signature of Authorized School Official     Title of Authorized School Official     Date

Any questions or problems concerning this school which have not been satisfactorily answered or resolved by the school should be directed to the Bureau for Private Postsecondary and Vocational Education, 400 R Street, Suite 500, Sacramento, CA 95814. (916) 445-3427

Case ... ... -SS ... ... ... ... ... ... ... ... Page ... of ... ID #:988

I understand that I will be charged tuition and fees at rates established by Brooks and published in the addendum to the catalog. The tuition and fees are subject to change as evaluated by Brooks Institutional staff on a periodically. Tuition rates may also vary depending on a student's enrollment status. Tuition is billed on a term basis (each term is eight weeks in length and is also referred to as a "session" in this Agreement). The tuition and fees do not include other program costs, including, but not limited to, books, supplies, and other costs associated with the selected program of study. These additional costs are the obligation of the student.

I understand that it is my sole responsibility to ensure that all tuition and fees for each term are paid prior to my beginning that term. For a detailed breakdown of my financial plan, I must refer to my financial aid award letters and/or cash payment agreements. If I leave school for any reason and return at a later date, I will be charged tuition at the rate in effect at the time of my return as well as any applicable reinstatement fee. I understand that I am not released from any of my obligations or commitments to Brooks if I leave the school for any reason or if I am not satisfied with the services provided.

**BUYER'S RIGHT TO CANCEL:** A Student who cancels this Agreement within 72 hours (until midnight of the third day excluding Saturdays, Sundays, and legal holidays) after signing the Agreement will receive a refund of all monies paid. A Student who cancels after 72 hours but prior to the Student's first day of class attendance will receive a refund of all monies paid, except for $100 of the Application Fee. If this Enrollment Agreement is not accepted by Brooks or if Brooks cancels this Agreement prior to the first day of class attendance, all monies, including the Application Fee, will be refunded. All requests for cancellation by the Student must be made in writing and mailed or hand delivered to the Academic Affairs Office at the Jefferson Facility, 1321 Alameda Padre Serra, Santa Barbara, CA 93103. For written notice sent by mail to the mailing address listed on the front of this form, the postmark date shall be used to determine the cancellation date.

**REFUND POLICY:** A Student may withdraw from any session after instruction has started and receive a pro rata refund for the unused portion of tuition and any other refundable charges provided that at least 40% of the session is remaining. (No refunds are granted once a session is more than 60% completed.) Refunds are made for students who withdraw or are withdrawn from Brooks prior to the completion of their program and are based on the tuition billed for the term in which the Student withdraws, according to the schedule set forth below. Refunds will be based on the total charge incurred by the Student at the time of withdrawal, not the amount the Student has actually paid. Tuition and fees attributable to any term beyond the term of withdrawal will be refunded in full. Any books, equipment, and/or uniforms that have been issued are nonrefundable. When a student withdraws from the institution, he/she must complete a student withdrawal form with the Academic Affairs Office. The date from which refunds will be determined is the last date of recorded attendance. Refunds will be made within 30 calendar days of the notification of an official withdrawal or date of determination of withdrawal by the institution. Credit balances less than $5 will not be refunded to the student/lender unless requested by the student.

Tuition refunds for withdrawals are calculated based on the following formula (Hours of Instruction include lecture, lab, and externship for all classes.):

TUITION CHARGED   X   NUMBER OF HOURS OF INSTRUCTION LEFT IN THE SESSION (beyond the last day of attendance)
                          divided by
                          TOTAL NUMBER OF HOURS OF INSTRUCTION IN THE SESSION

If student financial aid was disbursed for the session, some or all of the refund amount may be returned to the Student's and/or Parent's lender (credited toward the outstanding loan principal) and/or returned to the appropriate government grant fund, according to a calculation prescribed by federal regulation:

AID DISBURSED   X   NUMBER OF DAYS LEFT IN THE SESSION (beyond the last day of attendance)
                        divided by
                        TOTAL NUMBER OF DAYS IN THE SESSION

The amount of the refund returned to student aid programs cannot exceed the amount of tuition charges collected by the Institution. The order in which financial aid funds are returned is prescribed by federal regulation. (Students who receive financial aid and/or veterans educational benefits may be liable for any required overpayments that are not covered by a tuition refund. The Student's signature on this Agreement acknowledges the responsibility to make any payments required because of a withdrawal.)

**HYPOTHETICAL REFUND EXAMPLE**

- A student paid tuition in the amount of $3600 for a session that totaled 90 hours of instruction and
- withdraws after the 36th hour of instruction (54 hours of instruction left)
- on the 22nd day of a 55-day session (33 days left)

The student would be entitled to a refund of:

$3600   x   $\frac{54}{90}$   =   $2160

If the student had received student loan disbursements of $2000 for the session (and no other government aid):

$2000   x   $\frac{33}{55}$   =   $1200 of the refund would be sent to the lender and applied toward the outstanding loan principal; the remaining $960 would be refunded directly to the student

**Return of Title IV Funds Policy** Brooks follows the federal Return of Title IV Funds Policy to determine the amount of Title IV aid a Student has received and the amount, if any, which needs to be returned at the time of withdrawal. Under current federal regulations, the amount of aid earned is calculated on a pro rata basis through 60% of the term. After the 60% point in the term, a Student has earned 100% of the Title IV funds. Brooks may adjust the Student's account based on any repayments of Title IV funds that Brooks was required to make. For details regarding this policy, please see the Brooks catalog.

**Policies and Disclosures**
1. **Catalog:** Information about Brooks is published in a catalog that contains a description of certain policies, rules, procedures, and other information about the school. Brooks reserves the right to change any provision of the catalog at any time. Notice of changes will be communicated in a revised catalog, an addendum or supplement to the catalog, or other written format. Students are expected to read and be familiar with the information contained in the school catalog, in any revisions, supplements and addenda to the catalog, and with all school policies. By enrolling in Brooks, the Student agrees to abide by the terms stated in the catalog and all school policies.

**... TO READ ALL PAGES OF THIS AGREEMENT -- ALL PAGES ARE PART OF YOUR CONTRACT WITH THE SCHOOL.**
*I have read this page of the Agreement. (Please initial)* **P?**     Revised 10/23/02

Changes: Brooks reserves the right to make ... nges at any time to any provision of the catal... including the amount of tuition and fees, academic programs a... ...rses, school policies and procedures, faculty and adm... ...ve staff, the school calenda... and other ... ...and other ... ...Brooks also reserves the right to make changes in equi... ...and instructional materials, to modify curriculum, and when size and curriculum permit, to combine classes.

3. **Elimination of Classes:** Brooks reserves the right to cancel or postpone a scheduled class start when the number of students scheduled to start the program is not sufficient as determined by the Brooks. If the Student does not choose to change to a different start date, the Student will be eligible for a full refund.

4. **Transfer of Credits:** The awarding of credit for coursework completed at any other institution is at the sole discretion of Brooks. Additionally, Brooks does not imply, promise, or guarantee that any credits earned at Brooks will be transferable or accepted by any other institution.

5. **Success of Student:** The Student's individual success or satisfaction is not guaranteed, and is dependent upon the Student's individual efforts, abilities and application of himself/herself to the requirements of the school.

6. **Student's Failure to Meet Obligations:** Brooks reserves the right to terminate a Student's enrollment for failure to maintain satisfactory academic progress, failure to pay tuition or fees by applicable deadlines, disruptive behavior, posing a danger to the health or welfare of students or other members of the Brooks community, or failure to abide by Brooks policies and procedures. Brooks can discontinue a student's enrollment status, not issue grades, and deny requests for transcripts should a student not meet all of his/her financial and institutional obligations. The Student may be financially liable if he/she loses or damages property belonging to Brooks.

7. **Employment:** Brooks does not guarantee employment following graduation but does offer career planning assistance to students and graduates.

8. **Use of Images and Works:** The undersigned agrees that Brooks may use his/her name, voice, image, likeness, and biographical facts, and any materials produced as a student while enrolled at Brooks, without any further approval or payment, unless prohibited by law. The undersigned acknowledges that the foregoing permission includes the right to tape and photograph him or her and to record his or her voice, conversation and sounds for use in any manner or medium in connection with any advertising, publicity, or other information relating to Brooks.

9. **Discrimination:** Brooks does not discriminate on the basis of race, gender, sexual orientation, religion, creed, color, national origin, ancestry, marital status, age, disability, or any other factor prohibited by law in the recruitment and admission of students, the operation of any of its educational programs and activities, and the recruitment and employment of faculty and staff. The Director of Student Management at Brooks serves as the compliance coordinator for Title IX of the Educational Amendments of 1972 and Section 504 of the Rehabilitation Act of 1973, which prohibit discrimination on the basis of sex or handicap.

10. **Dispute Resolution:** Any disputes or controversies between the parties to this Agreement arising out of or relating to the student's recruitment, enrollment, attendance, education or career service assistance by Brooks or to this Agreement shall be resolved first through the grievance policy published in the catalog. If not resolved in accordance with the procedures outlined in the school catalog to the satisfaction of the student, then the dispute may be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect or in accordance with procedures that the parties agree to in the alternative. The Federal Arbitration Act and related federal judicial procedure shall govern this agreement to the fullest extent possible, excluding all state arbitration law, irrespective of the location of the arbitration proceedings or of the nature of the court in which any related proceedings may be brought. Any such arbitration shall be the sole remedy for the resolution of any disputes or controversies between the parties to this agreement. Any such arbitration shall take place before a neutral arbitrator in a locale near Brooks unless the Student and Brooks agree otherwise. The arbitrator must have knowledge of and actual experience in the administration and operation of postsecondary educational institutions unless the parties agree otherwise. The arbitrator shall apply federal law to the fullest extent possible in rendering a decision. The arbitrator shall have the authority to award monetary damages measured by the prevailing party's actual damages and may grant any nonmonetary remedy or relief that the arbitrator deems just and equitable and within the scope of this agreement between the parties. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator shall not have any authority to award punitive damages, treble damages, consequential or indirect damages; or other damages not measured by the prevailing party's actual damages, or to award attorney's fees. The arbitrator also shall not have any authority to alter any grade issued to a student. The parties shall bear their own costs and expenses. The parties also shall bear an equal share of the fees and costs of the arbitration, which include but are not limited to the fees and costs of the arbitrator, unless the parties agree otherwise or the arbitrator determines otherwise in the award. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any such arbitration without the prior written consent of both parties.

11. **NOTICE:** Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

12. **Assignment:** None of the rights of the Student or the Student's parent under this Enrollment Agreement are assignable to any other person or entity.

13. **Entire Agreement:** This Enrollment Agreement constitutes the entire agreement between Student and the Brooks concerning all aspects of the education and training the Student will be provided by the school. By signing this agreement, the Student agrees that no binding promises, representations or statements have been made to the Student by Brooks or any employee of Brooks regarding any aspect of the education and training the Student will receive from the school that are not set forth in writing in this Enrollment Agreement. Brooks will not be responsible for any statement of policy, career planning activities, curriculum or facility that does not appear in this Enrollment Agreement or the school catalog.

14. **Other Fees and Charges:** The Institution reserves the right to assess additional charges for schedule changes, late payments and returned checks. Separate agreements will be completed to identify additional charges to students who want to reserve space in specific courses. These non-instructional charges are not refundable. Students who are allowed to enroll in an overload (more than nine credits per session) or audit a course are assessed additional charges, which are refundable according to the Institution's Refund Policy.

15. **California Student Tuition Recovery Fund** Any Student who is a resident of California, who pays his or her own tuition, either directly or through a loan, must pay a state-imposed fee for the Student Tuition Recovery Fund (STRF). Students who are not California residents are not eligible for protection under and recovery from the STRF nor are students who are recipients of third-party payer tuition and course costs. Refer to the catalog addendum for the current STRF fee schedule.

---

ACKNOWLEDGEMENT OF RECEIPT OF FUNDS $_____ By:_____ Date:_____

Payment Method: ☐ MasterCard   ☐ Visa   ☐ Cash   ☐ Check/Money Order #_____

CREDIT CARD AUTHORIZATION: I hereby authorize the use of my credit card for a one-time charge of $_____ toward the amounts listed on this Agreement.

Name as it appears on the credit card _____  MasterCard/Visa account number _____  Expiration date _____

Cardholder's signature _____  Date _____

---

**BE SURE TO READ ALL PAGES OF THIS AGREEMENT -- ALL PAGES ARE PART OF YOUR CONTRACT WITH THE SCHOOL.**

*I have read this page of the Agreement. (Please initial)* PT

*Revised 10/23/03*

# Exhibit C

BROOKS Institute
of Photography

Montecito Facility - 801 Alston Road, Santa Barbara, CA 93108 - mailing address
Jefferson Facility - 1321 Alameda Padre... Barbara, CA 93103
State Street Facility - 1722 State Street, S... Barbara, CA 93101
Ventura Facility - 5301 N. Ventura Ave., Ventura CA 93001
Alessandro Facility - 2151 Alessandro Dr., Ventura, CA 93001
Mason Street Facility - 25/27 Mason Street, Santa Barbara, CA 93101
(805) 966-3888/(888) 304-3456

Name ("Student") __Pamma Tahan__    Date __6/9/05__

Address _____    City _____ State __CA__ Zip _____

Telephone (Home) _____    Telephone (Work) (___)___-____

E-Mail _____    Social Security Number _____

High School __Thousand Oaks HS__    Year Graduated __2003__    GED Certificate Date __06/2003__

Are you at least 18 years of age? _X_ Yes ___ No
Are you a U.S. citizen? _X_ Yes ___ No    If no, are you a resident alien? ___ Yes ___ No

**Program**

☑ Bachelor of Arts Degree Program (18 Sessions/159 Semester Credits)
  ___ Film and Video Production
  ___ Professional Photography
  ✓ Visual Journalism
  ___ Visual Communications

☐ Associate of Arts Degree Program (8 Sessions/72 Semester Credits)
  ___ Visual Journalism

☐ Diploma Program (17 Sessions/108 Semester Credits)
  ___ Film and Video Production
  ___ Professional Photography

Date of first class ___July 8, 2005___    Anticipated Completion Date __July 2006__
The time frames provided are based on full-time student status for a normally progressing student. The actual time frame for
completion can vary depending on the individual.

**Program Costs**
The cost for this program at Brooks Institute of Photography ("Brooks") is as follows, subject to the terms and policies as stated in this
Enrollment Agreement.

| TUITION AND FEES | | |
|---|---|---|
| Tuition per term | $3,960.00 | |
| Application Fee | -0- | |
| Student Tuition Recovery Fund (STRF) Fee non-refundable* (per term) | $ 10.00 | |
| Fee | $ 600.00 | |
| Books and Supplies | -0- | |
| TOTAL TUITION AND FEES | | $24,420.00 |

*STRF Fee applies to California residents only.

I agree that the payment of program costs will be satisfied by (check all that apply):
☐ Cash    ☐ Credit Card    ☑ Will Apply for Financial Aid    ☐ Third Party (e.g., VA, Voc Rehab, Employer)

Although this Agreement includes the total length of the program, the program costs section covers only one academic year. The tuition noted above
is a per term cost. Students can expect an annual tuition increase. The Application Fee noted above is paid one time at application and is
nonrefundable. The Fee section noted above includes the activity fee for the academic year. One-sixth of this fee is charged each session and is non-
refundable after the start of each session. The cost of books and supplies is not charged by the institution; it is the direct responsibility of the student
to purchase all required items.

*By signing below, I certify that I have received a copy of this Enrollment Agreement, and that I have had time to read, understand and
agree to comply with all of its terms. I also acknowledge that I have received and had time to read and understand a copy of the
Brooks catalog in one of the following formats: printed (hard copy), CD-ROM, or downloaded from the Brooks online registration
site, and I agree to comply with all school policies and rules contained therein. I also acknowledge that I have received a copy of the
School Performance Fact sheet. I also understand and agree that this Enrollment Agreement supersedes all prior or
contemporaneous verbal or written statements and agreements made by Brooks or any employees of Brooks, and that no binding
promises, representations or statements have been made to me by Brooks or any employee of Brooks regarding any aspect of the
education and training I will receive from the school that are not set forth in writing in this Enrollment Agreement. I further
understand and agree that this Enrollment Agreement may not be modified without the written agreement of me and Brooks (except
that the stated tuition and fees are subject to change at the discretion of Brooks). I hereby certify that all information I provided in my
application for admission to Brooks is complete, accurate and up to date. Once I sign this Agreement, and Brooks accepts this
Agreement, I understand that a legally binding contract will be created. My signature indicates that I agree to all of the above terms.*

**My signature below certifies that I have read, understood, and agreed to my rights and responsibilities,
and that the institution's cancellation and refund policies have been clearly explained to me.**

_____    __6/9/05__
Signature of Student    Date

_____    _____
Signature of Parent or Guardian    (required if Student is under the age of 18)    Date

ACCEPTED BY BROOKS INSTITUTE OF PHOTOGRAPHY
__M. Olson__    __Administrative Assistant__    __6/9/05__
Signature of Authorized School Official    Title of Authorized School Official    Date
Any questions or problems concerning this school which have not been satisfactorily answered or
resolved by the school should be directed to the Bureau for Private Postsecondary and Vocational
Education, 400 R Street, Suite 5000, Sacramento, CA 95814. (916) 445-3427

BE SURE TO READ ALL PAGES OF THIS AGREEMENT -- ALL PAGES ARE PART OF YOUR CONTRACT WITH THE SCHOOL.

I understand that I will be charged tuition and fees at rates established by Brooks and published in the catalog and that I am fully responsible for the payment of tuition and fees charged by Brooks. The tuition and fees quoted above are subject to change as Brooks evaluates institution information and fee rates periodically. Tuition rates may also vary depending on a student's enrollment status. Tuition is billed on a term basis (each term is eight weeks in length and is also referred to as a "session" in this Agreement). The tuition and fees do not include other program costs, including, but not limited to, books, supplies, and other costs associated with the selected program of study. These additional costs are the obligation of the student.

I understand that it is my sole responsibility to ensure that all tuition and fees for each term are paid by me or funded from financial aid sources prior to my beginning that term. For a detailed breakdown of my financial plan, I must refer to my financial aid award letters and/or cash payment agreements. If I leave school for any reason and return at a later date, I will be charged tuition at the rate in effect at the time of my return as well as any applicable reinstatement fee. I understand that I am not released from any of my obligations or commitments to Brooks if I leave the school for any reason or if I am not satisfied with the services provided. I also understand that if I am in default of my obligations under this Enrollment Agreement and my account is referred to a collection agency or an outside attorney to collect the outstanding balance, I will pay the costs of collection, including reasonable attorney fees, to the extent permitted by state law.

**BUYER'S RIGHT TO CANCEL:** A Student who cancels this Agreement within 72 hours (until midnight of the third day excluding Saturdays, Sundays, and legal holidays) after signing the Agreement will receive a refund of all monies paid. A Student who cancels after 72 hours but prior to the Student's first day of class attendance will receive a refund of all monies paid, except for $100 of the Application Fee. If this Enrollment Agreement is not accepted by Brooks or if Brooks cancels this Agreement prior to the first day of class attendance, all monies, including the Application Fee, will be refunded. All requests for cancellation by the Student must be made in writing and mailed or hand delivered to the Academic Affairs Office at the Jefferson Facility, 1321 Alameda Padre Serra, Santa Barbara, CA 93103 or at the Ventura facility, 5301 N. Ventura Avenue, Ventura, CA 93001. For written notice sent by mail to the mailing address listed on the front of this form, the postmark date shall be used to determine the cancellation date.

**REFUND POLICY:** A Student may withdraw from any session after instruction has started and receive a pro rata refund for the unused portion of tuition and any other refundable charges provided that at least 40% of the session is remaining. (No refunds are granted once a session is more than 60% completed.) Refunds are made for students who withdraw or are withdrawn from Brooks prior to the completion of their program and are based on the tuition billed for the term in which the Student withdraws, according to the schedule set forth below. Tuition and fees attributable to any term beyond the term of withdrawal will be refunded in full. Any books, equipment, and/or uniforms that have been issued are nonrefundable. When a student withdraws from the institution, he/she must complete a student withdrawal form with the Academic Affairs Office. The date from which refunds will be determined is the last date of recorded attendance. Refunds will be made within 30 calendar days of the notification of an official withdrawal or date of determination of withdrawal by the institution. Credit balances less than $5 will not be refunded to the student/lender unless requested by the student.

Refunds are calculated based on the remaining lecture or externship hours of a class following a student's last date of attendance, according to the following formula:

| Lecture/Externship Hours Remaining | | Percentage of Refund of |
|---|---|---|
| divided by | equals | Tuition and Other Refundable Charges |
| Total Lecture/Externship Hours in the Class | | Paid for the Session |

If more than one class has the same last date of attendance, the institution uses the calculation that produces the greatest refund. If some or all of the payment was made by government financial aid funding, the Financial Aid Office will use a federally-mandated calculation to determine the amount of funds that must be returned to government aid programs. The returned amounts will be subtracted first from any refund amount and then, if applicable, from the student's account.

**Hypothetical Refund Example:**

A student withdraws from school having last attended a class that has 48 lecture hours in the session. At the time of the last day of attendance, the class had met for 28 lecture hours and had 20 remaining. The student had paid $3960 in tuition and refundable charges for the session.

$$20/48 \times \$3960 = \$1650 \text{ (refund amount)}$$

**Return of Title IV Funds Policy** Brooks follows the federal Return of Title IV Funds Policy to determine the amount of Title IV aid a Student has received and the amount, if any, which needs to be returned at the time of withdrawal. Under current federal regulations, the amount of aid earned is calculated on a pro rata basis through 60% of the term. After the 60% point in the term, a Student has earned 100% of the Title IV funds. Brooks may adjust the Student's account based on any repayments of Title IV funds that Brooks was required to make. For details regarding this policy, please see the Brooks catalog.

**Policies and Disclosures**
1. **Catalog:** Information about Brooks is published in a catalog that contains a description of certain policies, rules, procedures, and other information about the school. Brooks reserves the right to change any provision of the catalog at any time. Notice of changes will be communicated in a revised catalog, an addendum or supplement to the catalog, or other written format. Students are expected to read and be familiar with the information contained in the school catalog, in any revisions, supplements and addenda to the catalog, and with all school policies. By enrolling in Brooks, the Student agrees to abide by the terms stated in the catalog and all school policies. The catalog in effect at the time a student starts classes is part of the contract between Brooks and the Student.
2. **Changes:** Brooks reserves the right to make changes at any time to any provision of the catalog, including the amount of tuition and fees, academic programs and courses, school policies and procedures, faculty and administrative staff, the school calendar and other dates, and other provisions. Brooks also reserves the right to make changes in equipment and instructional materials, to modify curriculum, and when size and curriculum permit, to combine classes.
3. **Program Changes and Cancellation:** Brooks reserves the right to change, amend, alter, or modify its program offerings and/or schedules. Students who are already enrolled will be notified of any changes, including a change in start date, and every attempt will be made to accommodate student preferences with regard to any schedule change. If the Student does not choose to change to a different start date, the Student will be eligible for a full refund. Brooks reserves the right to postpone the student's start date at its sole discretion.

---

BE SURE TO READ ALL PAGES OF THIS AGREEMENT -- ALL PAGES ARE PART OF YOUR CONTRACT WITH THE SCHOOL.
*I have read this page of the Agreement. (Please initial)*   *Revised 1/05*

4. **Notice Concerning Transferability of Units and Degrees Earned at Brooks Institute of Photography:** Units you earn in the program as described on page _____ of this Agreement in most cases will probably not be transferable to any other college or university. For example, if you entered our school as a freshman, you will still be a freshman if you enter another college or university at some time in the future even though you earned units here at our school. In addition, if you earn a degree, diploma, or certificate in this program, in most cases it will probably not serve as a basis for obtaining a higher level degree at another college or university.

5. **Success of Student:** The Student's individual success or satisfaction is not guaranteed, and is dependent upon the Student's individual efforts, abilities and application of himself/herself to the requirements of the school.

6. **Student's Failure to Meet Obligations:** Brooks reserves the right to terminate a Student's enrollment for failure to maintain satisfactory academic progress, failure to pay tuition or fees by applicable deadlines, disruptive behavior, posing a danger to the health or welfare of students or other members of the Brooks community, or failure to abide by Brooks policies and procedures. Brooks can discontinue a student's enrollment status, not issue grades, and deny requests for transcripts should a student not meet all of his/her financial and institutional obligations. The Student may be financially liable if he/she loses or damages property belonging to Brooks.

7. **Employment:** Brooks does not guarantee employment following graduation but does offer career planning assistance to students and graduates. Some job or internship opportunities may require background checks prior to employment. Applicants with factors such as a prior criminal background or personal bankruptcy may not be considered for employment in some positions. Employment and internship decisions are outside the control of the school. Some programs may require additional education, licensure and/or certification for employment in some positions.

8. **Use of Images and Works:** The undersigned agrees that Brooks may use his/her name, voice, image, likeness, and biographical facts, and any materials produced as a student while enrolled at Brooks, without any further approval or payment, unless prohibited by law. The undersigned acknowledges that the foregoing permission includes the right to tape and photograph him or her and to record his or her voice, conversation and sounds for use in any manner or medium in connection with any advertising, publicity, or other information relating to Brooks.

9. **Discrimination:** Brooks does not discriminate on the basis of race, gender, sexual orientation, religion, creed, color, national origin, ancestry, marital status, age, disability, or any other factor prohibited by law in the recruitment and admission of students, the operation of any of its educational programs and activities, and the recruitment and employment of faculty and staff. The Director of Student Management at Brooks serves as the compliance coordinator for Title IX of the Educational Amendments of 1972 and Section 504 of the Rehabilitation Act of 1973, which prohibit discrimination on the basis of sex or handicap.

10. **Dispute Resolution:** Any disputes or controversies between the parties to this Agreement arising out of or relating to the student's recruitment, enrollment, attendance, education or career service assistance by Brooks or to this Agreement shall be resolved first through the grievance policy published in the catalog. If not resolved in accordance with the procedures outlined in the school catalog to the satisfaction of the student, then the dispute may be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect or in accordance with procedures that the parties agree to in the alternative. The Federal Arbitration Act and related federal judicial procedure shall govern this agreement to the fullest extent possible, excluding all state arbitration law, irrespective of the location of the arbitration proceedings or of the nature of the court in which any related proceedings may be brought. Any such arbitration shall be the sole remedy for the resolution of any disputes or controversies between the parties to this agreement. Any such arbitration shall take place before a neutral arbitrator in a locale near Brooks unless the Student and Brooks agree otherwise. The arbitrator must have knowledge of and actual experience in the administration and operation of postsecondary educational institutions unless the parties agree otherwise. The arbitrator shall apply federal law to the fullest extent possible in rendering a decision. The arbitrator shall have the authority to award monetary damages measured by the prevailing party's actual damages and may grant any nonmonetary remedy or relief that the arbitrator deems just and equitable and within the scope of this agreement between the parties. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator shall not have any authority to award punitive damages, treble damages, consequential or indirect damages, or other damages not measured by the prevailing party's actual damages, or to award attorney's fees. The arbitrator also shall not have any authority to alter any grade issued to a student. The parties shall bear their own costs and expenses. The parties also shall bear an equal share of the fees and costs of the arbitration, which include but are not limited to the fees and costs of the arbitrator, unless the parties agree otherwise or the arbitrator determines otherwise in the award. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any such arbitration without the prior written consent of both parties.

11. **NOTICE:** Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

12. **Assignment:** None of the rights of the Student or the Student's parent under this Enrollment Agreement are assignable to any other person or entity.

13. **Entire Agreement:** This Enrollment Agreement constitutes the entire agreement between Student and the Brooks concerning all aspects of the education and training the Student will be provided by the school. By signing this agreement, the Student agrees that no binding promises, representations or statements have been made to the Student by Brooks or any employee of Brooks regarding any aspect of the education and training the Student will receive from the school that are not set forth in writing in this Enrollment Agreement. Brooks will not be responsible for any statement of policy, career planning activities, curriculum or facility that does not appear in this Enrollment Agreement or the school catalog.

14. **Other Fees and Charges:** The Institution reserves the right to assess additional charges for schedule changes, late payments and returned checks. Separate agreements will be completed to identify additional charges to students who want to reserve space in specific courses. These non-instructional charges are not refundable. Students who are allowed to enroll in more than one core class or audit a course are assessed additional charges, which are refundable according to the Institution's Refund Policy.

15. **California Student Tuition Recovery Fund** Any Student who is a resident of California, who pays his or her own tuition, either directly or through a loan, must pay a state-imposed fee for the Student Tuition Recovery Fund (STRF). Students who are not California residents are not eligible for protection under and recovery from the STRF nor are students who are recipients of third-party payer tuition and course costs. Refer to the catalog for the current STRF fee schedule.

---

ACKNOWLEDGMENT OF RECEIPT OF FUNDS  $_____  By: _____  Date: _____

Payment Method:  ☐ MasterCard   ☐ Visa   ☐ Cash   ☐ Check/Money Order # _____

CREDIT CARD AUTHORIZATION:  I hereby authorize the use of my credit card for a one-time charge of $_____ toward the amounts listed on this Agreement.

Name as it appears on the credit card _____   MasterCard/Visa account number _____   Expiration date _____

Cardholder's signature _____   Date _____

---

**BE SURE TO READ ALL PAGES OF THIS AGREEMENT -- ALL PAGES ARE PART OF YOUR CONTRACT WITH THE SCHOOL.**

Page 3 of 3           *I have read this page of the Agreement. (Please initial)* _____           *Revised 1/05*

**Exhibit D**

# Brooks Institute of Photography

## Enrollment Agreement

Montecito Facility - 801 Alston Road, Santa Barbara, CA 93108 - mailing address
Jefferson Facility - 1321 Alameda Padre Serra, Santa Barbara, CA 93103
State Street Facility - 1722 State Street, Santa Barbara, CA 93101
Ventura Facility - 5301 N. Ventura Ave., Ventura CA 93001
Alessandro Facility - 2151 Alessandro Dr., Ventura, CA 93001
Mason Street Facility - 25/27 Mason Street, Santa Barbara, CA 93101
Cota Street Facility - 27 E. Cota Street, Santa Barbara, CA 93101
(805) 966-3888/(888) 304-3456

Name ("Student") Tamma Tahan   Date 6/15/06

Address ____ Dr.   City Thousand Oaks   State CA   Zip 91360

Telephone (Home) ____   Telephone (Work) ____

E-Mail ____   Social Security Number ____

High School Thousand Oaks HS   Year Graduated 2003   GED Certificate Date 6/2006

Are you at least 18 years of age? X Yes __ No
Are you a U.S. citizen? X Yes __ No   If no, are you a resident alien? __ Yes __ No

**Program**

X Bachelor of Arts Degree Program (18 Sessions/159 Semester Credits)
__ Film and Video Production
X Professional Photography
X Visual Journalism
__ Visual Communication

☐ Associate of Arts Degree Program (8 Sessions/72 Semester Credits)
__ Visual Journalism
☐ Diploma Program (17 Sessions/108 Semester Credits)
__ Film and Video Production
__ Professional Photography

Date of first class July 14 2006   Anticipated Completion Date September 2 2006
The time frames provided are based on full-time student status for a normally progressing student. The actual time frame for completion can vary depending on the individual.

**Program Costs**

The cost for this program at Brooks Institute of Photography ("Brooks") is as follows, subject to the terms and policies as stated in this Enrollment Agreement.

| TUITION AND FEES | |
|---|---|
| Tuition per term | $3960 |
| Application Fee | $0 |
| Student Tuition Recovery Fund (STRF) Fee non-refundable* (per term) | $0 |
| Fee | $100 |
| Books and Supplies | $0 |
| TOTAL TUITION AND FEES | $4,060 |

*STRF Fee applies to California residents only.

I agree that the payment of program costs will be satisfied by (check all that apply):
☐ Cash   ☐ Credit Card   ☒ Will Apply for Financial Aid   ☐ Third Party (e.g., VA, Voc Rehab, Employer)

This Agreement includes the total length of the program for a normally progressing student. A new Enrollment Agreement will be required if the student changes the Date of First Class, changes academic programs, or does not maintain continuous enrollment. The new Enrollment Agreement will be negotiated at the rate in effect at the time, which may be higher than the rate used for this agreement. The tuition noted above is a per term cost. The Application Fee noted above is paid one time at application and is nonrefundable. The Fee section noted above includes the activity fee for the program; each session's portion is nonrefundable after the student has started the session. The cost of books and supplies is not charged by the institution; it is the direct responsibility of the student to purchase all required items. At the time of negotiation of this agreement, the state of California is not requiring collection of STRF fees. If the state requires collection during the term of this agreement, Brooks may notify the student and begin collecting the fee at a rate established by the state.

*By signing below, I certify that I have received a copy of this Enrollment Agreement, and that I have had time to read, understand and agree to comply with all of its terms. I also acknowledge that I have received and had time to read and understand a copy of the Brooks catalog in one of the following formats: printed (hard copy), CD-ROM, or downloaded from the Brooks online registration site, and I agree to comply with all school policies and rules contained therein. I also acknowledge that I have received a copy of the School Performance Fact sheet. I also understand and agree that this Enrollment Agreement supersedes all prior or contemporaneous verbal or written statements and agreements made by Brooks or any employees of Brooks, and that no binding promises, representations or statements have been made to me by Brooks or any employee of Brooks regarding any aspect of the education and training I will receive from the school that are not set forth in writing in this Enrollment Agreement. I further understand and agree that this Enrollment Agreement may not be modified without the written agreement of me and Brooks (except that the stated tuition and fees are subject to change at the discretion of Brooks). I hereby certify that all information I provided in my application for admission to Brooks is complete, accurate and up to date. Once I sign this Agreement, and Brooks accepts this Agreement, I understand that a legally binding contract will be created. My signature indicates that I agree to all of the above terms.*

**My signature below certifies that I have read, understood, and agreed to my rights and responsibilities, and that the institution's cancellation and refund policies have been clearly explained to me.**

Signature of Student   Date 6/15/06

Signature of Parent or Guardian   (required if Student is under the age of 18)   Date

ACCEPTED BY BROOKS INSTITUTE OF PHOTOGRAPHY
Signature of Authorized School Official   Title of Authorized School Official ADMIN ASST   Date 6-15-06

Any questions or problems concerning this school which have not been satisfactorily answered or resolved by the school should be directed to the Bureau for Private Postsecondary and Vocational Education, 1625 N. Market Street, Sacramento, CA 95834. (916) 445-3427

BE SURE TO READ ALL PAGES OF THIS AGREEMENT -- ALL PAGES ARE PART OF YOUR CONTRACT WITH THE SCHOOL.
Page 1 of 3   Revised 1/05

I understand that I will be charged tuition and fees at rates established by Brooks and published in the catalog and that I am fully responsible for the payment of the tuition and fees charged by Brooks. Tuition is billed on a term basis (each term is eight weeks in length and is also referred to as a "session" in this Agreement). The tuition and fees do not include other program costs, including, but not limited to, books, supplies, and other costs associated with the selected program of study. These additional costs are the obligation of the student.

I understand that it is my sole responsibility to ensure that all tuition and fees for each term are paid by me or funded from financial aid sources prior to my beginning that term. For a detailed breakdown of my financial plan, I must refer to my financial aid award letters and/or cash payment agreements. If I leave school for any reason and return at a later date, I will be charged tuition at the rate in effect at the time of my return as well as any applicable reinstatement fee. I understand that I am not released from any of my obligations or commitments to Brooks if I leave the school for any reason or if I am not satisfied with the services provided. I also understand that if I am in default of my obligations under this Enrollment Agreement and my account is referred to a collection agency or an outside attorney to collect the outstanding balance, I will pay the costs of collection, including reasonable attorney fees, to the extent permitted by state law.

**BUYER'S RIGHT TO CANCEL:** A Student who cancels this Agreement within 72 hours (until midnight of the third day excluding Saturdays, Sundays, and legal holidays) after signing the Agreement will receive a refund of all monies paid. A Student who cancels after 72 hours but prior to the Student's first day of class attendance will receive a refund of all monies, except for $100 of the Application Fee. If this Enrollment Agreement is not accepted by Brooks or if Brooks cancels this Agreement prior to the first day of class attendance, all monies, including the Application Fee, will be refunded. All requests for cancellation by the Student must be made in writing and mailed or hand delivered to the Academic Affairs Office at the Jefferson Facility, 1321 Alameda Padre Serra, Santa Barbara, CA 93103 or at the Ventura facility, 5301 N. Ventura Avenue, Ventura, CA 93001. For written notice sent by mail to the mailing address listed on the front of this form, the postmark date shall be used to determine the cancellation date.

**REFUND POLICY:** A Student may withdraw from any session after instruction has started and receive a pro rata refund for the unused portion of tuition and any other refundable charges provided that at least 40% of the session is remaining. (No refunds are granted once a session is more than 60% completed.) Refunds are made for students who withdraw or are withdrawn from Brooks prior to the completion of their program and are based on the tuition billed for the term in which the Student withdraws, according to the schedule set forth below. Tuition and fees attributable to any term beyond the term of withdrawal will be refunded in full. Any books, equipment, and/or uniforms that have been issued are nonrefundable. When a student withdraws from the institution, he/she must complete a student withdrawal form with the Academic Affairs Office. The date from which refunds will be determined is the last date of recorded attendance. Refunds will be made within 30 calendar days of the notification of an official withdrawal or date of determination of withdrawal by the institution. Credit balances less than $5 will not be refunded to the student/lender unless requested by the student.

Refunds are calculated based on the remaining lecture or externship hours of a class following a student's last date of attendance, according to the following formula:

Lecture/Externship Hours Remaining
divided by                                    equals
Total Lecture/Externship Hours in the Class

Percentage of Refund of
Tuition and Other Refundable Charges
Paid for the Session

If more than one class has the same last date of attendance, the institution uses the calculation that produces the greatest refund. If some or all of the payment was made by government financial aid funding, the Financial Aid Office will use a federally-mandated calculation to determine the amount of funds that must be returned to government aid programs. The returned amounts will be subtracted first from any refund amount and then, if applicable, from the student's account.

Hypothetical Refund Example:

A student withdraws from school having last attended a class that has 48 lecture hours in the session. At the time of the last day of attendance, the class had met 28 lecture hours and had 20 remaining. The student had paid $4060 in tuition and refundable charges for the session.

20/48 x $4060 = $1691.67 (refund amount)

**Return of Title IV Funds Policy** Brooks follows the federal Return of Title IV Funds Policy to determine the amount of Title IV aid a Student has received and the amount, if any, which needs to be returned at the time of withdrawal. Under current federal regulations, the amount of aid earned is calculated on a pro rata basis through 60% of the term. After the 60% point in the term, a Student has earned 100% of the Title IV funds. Brooks may adjust the Student's account based on any repayments of Title IV funds that Brooks was required to make. For details regarding this policy, please see the Brooks catalog.

**Policies and Disclosures**
1.  **Catalog:** Information about Brooks is published in a catalog that contains a description of certain policies, rules, procedures, and other information about the school. Brooks reserves the right to change any provision of the catalog at any time. Notice of changes will be communicated in a revised catalog, an addendum or supplement to the catalog, or other written format. Students are expected to read and be familiar with the information contained in the school catalog, in any revisions, supplements and addenda to the catalog, and with all school policies. By enrolling in Brooks, the Student agrees to abide by the terms stated in the catalog and all school policies. The catalog in effect at the time a student starts classes is part of the contract between Brooks and the Student.
2.  **Changes:** Brooks reserves the right to make changes at any time to any provision of the catalog, including the amount of tuition and fees, academic programs and courses, school policies and procedures, faculty and administrative staff, the school calendar and other dates, and other provisions. Brooks also reserves the right to make changes in equipment and instructional materials, to modify curriculum, and when size and curriculum permit, to combine classes.
3.  **Program Changes and Cancellation:** Brooks reserves the right to change, amend, alter, or modify its program offerings and/or schedules. Students who are already enrolled will be notified of any changes, including a change in start date, and every attempt will be made to accommodate student preferences with regard to any schedule change. If the Student does not choose to change to a different start date, the Student will be eligible for a full refund. Brooks reserves the right to postpone the student's start date at its sole discretion.

**Notice Concerning Transferability of Units and Degrees Earned at Brooks Institute of Photography:** Units you earn in the program as identified on page one of this Agreement in most cases will probably not be transferable to any other college or university. For example, if you entered our school as a freshman, you will still be a freshman if you enter another college or university at some time in the future even though you earned units here at our school. In addition, if you earn a degree, diploma, or certificate in this program, in most cases it will probably not serve as a basis for obtaining a higher level degree at another college or university.

5. **Success of Student:** The Student's individual success or satisfaction is not guaranteed, and is dependent upon the Student's individual efforts, abilities and application of himself/herself to the requirements of the school.

6. **Student's Failure to Meet Obligations:** Brooks reserves the right to terminate a Student's enrollment for failure to maintain satisfactory academic progress, failure to pay tuition or fees by applicable deadlines, disruptive behavior, posing a danger to the health or welfare of students or other members of the Brooks community, or failure to abide by Brooks policies and procedures. Brooks can discontinue a student's enrollment status, not issue grades, and deny requests for transcripts should a student not meet all of his/her financial and institutional obligations. The Student may be financially liable if he/she loses or damages property belonging to Brooks.

7. **Employment:** Brooks does not guarantee employment following graduation but does offer career planning assistance to students and graduates. Some job or internship opportunities may require background checks prior to employment. Applicants with factors such as a prior criminal background or personal bankruptcy may not be considered for employment in some positions. Employment and internship decisions are outside the control of the school. Some programs may require additional education, licensure and/or certification for employment in some positions.

8. **Use of Images and Works:** The undersigned agrees that Brooks may use his/her name, voice, image, likeness, and biographical facts, and any materials produced as a student while enrolled at Brooks, without any further approval or payment, unless prohibited by law. The undersigned acknowledges that the foregoing permission includes the right to tape and photograph him or her and to record his or her voice, conversation and sounds for use in any manner or medium in connection with any advertising, publicity, or other information relating to Brooks.

9. **Discrimination:** Brooks does not discriminate on the basis of race, gender, sexual orientation, religion, creed, color, national origin, ancestry, marital status, age, disability, or any other factor prohibited by law in the recruitment and admission of students, the operation of any of its educational programs and activities, and the recruitment and employment of faculty and staff. The Director of Student Management at Brooks serves as the compliance coordinator for Title IX of the Educational Amendments of 1972 and Section 504 of the Rehabilitation Act of 1973, which prohibit discrimination on the basis of sex or handicap.

10. **Dispute Resolution:** Any disputes or controversies between the parties to this Agreement arising out of or relating to the student's recruitment, enrollment, attendance, education or career service assistance by Brooks or to this Agreement shall be resolved first through the grievance policy published in the catalog. If not resolved in accordance with the procedures outlined in the school catalog to the satisfaction of the student, then the dispute may be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect or in accordance with procedures that the parties agree to in the alternative. The Federal Arbitration Act and related federal judicial procedure shall govern this agreement to the fullest extent possible, excluding all state arbitration law, irrespective of the location of the arbitration proceedings or of the nature of the court in which any related proceedings may be brought. Any such arbitration shall be the sole remedy for the resolution of any disputes or controversies between the parties to this agreement. Any such arbitration shall take place before a neutral arbitrator in a locale near Brooks unless the Student and Brooks agree otherwise. The arbitrator must have knowledge of and actual experience in the administration and operation of postsecondary educational institutions unless the parties agree otherwise. The arbitrator shall apply federal law to the fullest extent possible in rendering a decision. The arbitrator shall have the authority to award monetary damages measured by the prevailing party's actual damages and may grant any nonmonetary remedy or relief that the arbitrator deems just and equitable and within the scope of this agreement between the parties. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator shall not have any authority to award punitive damages, treble damages, consequential or indirect damages, or other damages not measured by the prevailing party's actual damages, or to award attorney's fees. The arbitrator also shall not have any authority to alter any grade issued to a student. The parties shall bear their own costs and expenses. The parties also shall bear an equal share of the fees and costs of the arbitration, which include but are not limited to the fees and costs of the arbitrator, unless the parties agree otherwise or the arbitrator determines otherwise in the award. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any such arbitration without the prior written consent of both parties.

11. **NOTICE:** Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

12. **Assignment:** None of the rights of the Student or the Student's parent under this Enrollment Agreement are assignable to any other person or entity.

13. **Entire Agreement:** This Enrollment Agreement constitutes the entire agreement between Student and the Brooks concerning all aspects of the education and training the Student will be provided by the school. By signing this agreement, the Student agrees that no binding promises, representations or statements have been made to the Student by Brooks or any employee of Brooks regarding any aspect of the education and training the Student will receive from the school that are not set forth in writing in this Enrollment Agreement. Brooks will not be responsible for any statement of policy, career planning activities, curriculum or facility that does not appear in this Enrollment Agreement or the school catalog.

14. **Other Fees and Charges:** The Institution reserves the right to assess additional charges for schedule changes, late payments and returned checks. Separate agreements will be completed to identify additional charges to students who want to reserve space in specific courses. These non-instructional charges are not refundable. Students who are allowed to enroll in more than one core class or audit a course are assessed additional charges, which are refundable according to the Institution's Refund Policy.

15. **California Student Tuition Recovery Fund** Any Student who is a resident of California, who pays his or her own tuition, either directly or through a loan, may be required to pay a state-imposed fee for the Student Tuition Recovery Fund (STRF). Students who are not California residents are not eligible for protection under and recovery from the STRF nor are students who are recipients of third-party payer tuition and course costs. Refer to the catalog for the current STRF fee schedule.

---

ACKNOWLEDGMENT OF RECEIPT OF FUNDS  $_____  By: _____
Date:

Payment Method: ☐ MasterCard   ☐ Visa   ☐ Cash   ☐ Check/Money Order #_____

CREDIT CARD AUTHORIZATION: I hereby authorize the use of my credit card for a one-time charge of $_____ toward the amounts listed on this Agreement.

| Name as it appears on the credit card | MasterCard/Visa account number | |
| --- | --- | --- |
| | | Expiration date |
| Cardholder's signature | Date | |

---

**BE SURE TO READ ALL PAGES OF THIS AGREEMENT -- ALL PAGES ARE PART OF YOUR CONTRACT WITH THE SCHOOL.**